UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NO.

| | |
|---|---|
| DR. DAVID F. ANDREWES, M.D. | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNUM GROUP and | ) |
| UNUM LIFE INSURANCE COMPANY | ) |
| OF AMERICA and | ) |
| BAY STATE HEATH, INC. | ) |
| LONG TERM DISABILITY | ) |
| PLAN and | ) |
| DR. NICHOLAS B. KLETTI, M.D. | ) |
| | ) |
|     Defendants, | ) |

## COMPLAINT WITH JURY DEMAND

### PARTIES

1. The Plaintiff David F. Andrewes, M.D., ("Dr. Andrewes") is an individual, who was formerly employed as an emergency room physician by Bay State Health, Inc.

2. The Defendant Unum Group is corporation existing under the laws of the State of Delaware, having a principal place of business at One Fountain Square, Hamilton County, Tennessee.

3. The Defendant Unum Life Insurance Company of America ("Unum Life") is an insurance company existing under the laws of the State of Maine having a substantial place of business at 18 Chestnut Street, Worcester, Worcester County, Massachusetts, and is a licensed foreign insurer conducting business in Massachusetts. Unum Life's resident agent for service of process is the Massachusetts Division of Insurance, One South Station, Boston, Suffolk County, Massachusetts.

1

4.  The Defendant Bay State Health, Inc., Long Term Disability Plan ("LTD Plan") is a long term disability plan of which Bay State Health, Inc., serves as the Plan Administrator, and has a corporate headquarters at 280 Chestnut Street, Springfield, Hampden County, Massachusetts.

5.  The Defendant Dr. Nicholas B. Kletti, M.D., is a physician employed by the Unum Group and is licensed to practice medicine in the Commonwealth of Massachusetts.


## JURISDICTION AND VENUE

6.  This Court has original jurisdiction for claims for benefits arising under 29 U.S.C. § 1132.

7.  Venue is proper before this Court, because the LTD Plan and its plan administrator, Bay State Health, Inc., are both located in Springfield, Hampden County, Massachusetts.

8.  Jurisdiction is predicated against Dr. Kletti, because he has engaged in systematic and continuous contacts in the Commonwealth of Massachusetts, including but not limited to:

    a.  maintaining a license to practice medicine in Massachusetts.

    b.  engaging in telephone conversation, and sending document(s) to Dr. Mohammad U. Qayyum, M.D., who treats Dr. Andrewes in the Commonwealth of Massachusetts.

    c.  sending document(s) to Dr. Joan Copperman, Ph.D., who treats Dr. Andrewes in the Commonwealth of Massachusetts.

    d.  sending document(s) to Dr. Elam Safi, M.D., who treats Dr. Andrewes in the Commonwealth of Massachusetts.

    e.  regularly engaging in telephone conversations, and sending documents to Unum Group employees located in Worcester, Massachusetts.

2

f. regularly offering medical and impairment opinions regarding residents of the

Commonwealth of Massachusetts.

e. offering a false opinion that Dr. Andrewes is fit to engage in his prior occupation as an

emergency room physician.

## FACTS COMMON TO ALL COUNTS

### Background Information on Dr. Andrewes and the LTD Plan

9.  Bay State Health, Inc., provided to its employees long term disability insurance coverage

through a long term disability insurance plan that was fully insured by Unum Life and the

Unum Group as identified as the LTD Plan.

10. At all times relevant hereto, Dr. Andrewes was a beneficiary and participant under the LTD

Plan that provided certain benefits to Bay State Health, Inc., employees including Dr.

Andrewes.

11. Dr. Andrewes is a "participant" in the LTD Plan, as defined by ERISA, 29 U.S.C. § 1002(7).

12. At all times material hereto, Dr. Andrewes has been "totally disabled" within the meaning of

the terms of the LTD Plan, and he has been entitled under the LTD Plan to be paid long-term

disability benefits, under the "own occupation" definition of the LTD Plan, and under the

"any occupation" definition and he continues to be disabled to date.

13. The definition of disability in the LTD Plan provides

3

**HOW DOES UNUM DEFINE DISABILITY?**
You are disabled when Unum determines that:
- you are limited from performing the **material** and **substantial**
duties of your **regular occupation** due to your **sickness** or **injury**;
and
- you have a 20% or more loss in your indexed monthly earnings
due to the same sickness or injury.
After 24 months of payments, you are disabled when Unum
determines that due to the same sickness or injury, you are unable
to perform the duties of any **gainful** occupation for which you are
reasonably fitted by education, training or experience.

You must be under the regular care of a physician in order to be
considered disabled.

14.  On September 18, 2008, Unum Group and Unum Life found Dr. Andrewes impaired and

entitled to benefits retroactive to the dated of disability, January 14, 2008.

15. Unum Group paid LTD benefits to Dr. Andrewes in the sum of $9358.00 per month.

16. Unum Group and Unum Life required Dr. Andrewes to apply for Social Security Disability

Income Benefits ("SSDI benefits").  His case remains pending before the Social Security

Administration.

17. In conformity with the LTD Plan terms, Dr. Andrewes applied for benefits under the Social

Security Act.

18. Dr. Andrewes has exhausted his administrative remedies under the LTD Plan and under

ERISA.

**Unum Group Paid Benefits And Without A Change Of Condition Terminated Benefits**

**Less Than Four Months Later**

19. Unum Group and Unum Life terminated benefits on December 4, 2008 wrongfully contending that Dr. Andrewes was not impaired from working as an emergency room physician.

20. There was no materially change in Dr. Andrewes health condition between September 18, 2008 when Unum Group and Unum Life awarded benefits and the date of terminated on December 4, 2008..

**Unum Group's Structural Conflict of Interest**

21.  At all times relative hereto, Unum Group has been operating under an inherent and structural conflict of interest as Unum Group is liable for benefit payments due to Dr. Andrewes as each payment depletes Unum Group's assets.

22. Unum Group is an insurance holding company that controls the activities of its subsidiaries including Unum Life pursuant to a General Services Agreement and other documents governing the operation of Unum Life.

23. Unum Life does not have any employees. All persons that conduct the business of Unum Life are employed by the Unum Group.

24. Unum Life and the Unum Group have a well documented history of parsimonious claim denials specifically set forth in the Findings of and Facts and Conclusions of Law of United States District Judge James C. Mahan dated November 14, 2008, <u>Merrick v. Paul Revere</u>, 594 F.Supp.2d 1168 (D. Nev. 2008).A copy of the Findings of Fact and Conclusions of Law are attached herewith as EXHIBIT A.

25. Similar conclusions are set forth in a law review article by the leading ERISA scholar, John H. Langbein, Sterling Professor of Law, Yale University, <u>Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials under ERISA</u>, 101 Northwestern Univ. Law Review 1315 (2007).

26. "First Unum...a subsidiary of Unum Provident Corporation [prior name to Unum Group] reveals a disturbing pattern of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics." <u>Radford Trust v. First Unum Life Ins. Co.</u>, 321 F. Supp. 2d 226, 247 (D. Mass. 2004), rev'd on other grounds, 491 F.3d 21, 25 (1st Cir. 2007).

27. Unum cloaks itself as an ERISA fiduciary but places its financial well-being paramount to that of its insureds, including Dr. Andrewes.

28. Unum Group has the ability to track all claims and review specific claims reserves attributable to a particular insured through data bases that can be viewed through various databases sometimes called Operations Metrics and Reporting.

29. E-mails are routinely sent by management to the claims handlers that discuss monthly, quarterly, and yearly historic targets/goals, recoveries, reserves, expected resolution dates ("ERD"), advance pay and close ("AP&C").

6

30. Financial information is tracked and shared with claims handlers in documents called MITRAK.

31. Unum Group uses a euphemism "recoveries" to mean terminating claims.

32. Exposing claims handlers to financial reserves, and requesting claims handlers to make "recoveries" causes claims handlers to make benefit decisions based on financial goals rather than examining the merits of each claim, including Dr. Andrewes, based on his medical restrictions and limitations to work as an emergency room physician.

33. Unum Group has various compensation programs available to different levels of employees, including the Management Incentive Compensation Plan ("MICP"), Long-Term Incentive ("LTI") plan for managers, including physicians who work for the defendants, and the Performance Recognition Plan ("PRP") for non-managers if not under the MICP.

34. Employees that save Unum Group money by terminating or denying claims are likely to advance at Unum Group and receive financial rewards.

**Count I**
**Benefits Due From Unum Group, Unum Life and the**
**LTD Plan under ERISA, 29 U.S.C.§ 1132**

35. Dr. Andrewes realleges paragraphs 1 through 34 and incorporates the same by reference as if fully set forth herein again.

36. This Court must conduct a plenary proceeding in evaluating Unum Group's and Unum Life's decision to deny benefits.

37.  To the extent that Unum Group or Unum Life had been granted discretionary authority

7

under the LTD Plan, both Unum Group and Unum Life failed to exercise that discretion timely as required under the applicable United States Department of Labor regulations. 29 C.F.R. § 2560.503-1( l).

38. Unum has had Dr. Andrewes appeal in its possession since June 1, 2009 and to date has not made a benefits decision.

39. Recently Unum Group and Unum Life has asked Dr. Andrewes if he would like to undergo an examination by a physician that Unum Group and Unum Life will not disclose until Dr. Andrewes first agrees to the examination.

40. In other claims with Unum Group and Unum Life, both the Unum Group and Unum Life have agreed to disclose the names of physicians in advance and provide alternatives when a claimant objects to a particular physician who is biased.

41.  Requesting a medical examination after denying a claim without a change in condition is indicative of wrongful conduct under ERISA. See Sidou v. Unum Provident Corp., 245 F.Supp.2d 207, 216 (D.Me. 2003)("any relative utility in conducting an examination should have been apparent to [the insurer well before the denial]" and finding that it is "simply unreasonable" to request an examination following the denial).

42. The decision on December 4, 2008 to deny LTD Plan benefits was wrongful and not in compliance with applicable laws.

43. Unum Group and Unum Life acted with unclean hands having used medical doctors who are known to be biased and having failed to comply with timeliness requirements set forth in the LTD Plan and by the United States Department of Labor regulations.

44. As a result of Unum Group's and Unum Life's refusal and failure to pay to Dr. Andrewes

disability benefits provided to him and to those participants who are totally disabled, Dr. Andrewes is entitled to relief against Unum Group and Unum Life and the LTD Plan to recover benefits due to him under the terms of the LTD Plan and to enforce his rights to benefits under the LTD Plan and to clarify his rights to future benefits under the LTD Plan pursuant to 29 U.S.C. § 1132.

45. If this Court orders payment of benefits, this Court may enter appropriate relief under ERISA precluding Unum Group and Unum Life after the LTD Plan from utilizing "off sets" against benefits payable to Dr. Andrewes, because Unum Group and Unum Life materially breached the LTD Plan terms.

### Count II
### Mental Illness Limitation Is Arbitrary And Unenforceable
### Under the Anti-Discrimination Laws of Massachusetts and the United States

46. Dr. Andrewes realleges paragraphs 1 through 43 and incorporates the same by reference as if fully set forth herein again.

47. Under the terms of the LTD plan, there is a purported limitation for certain non-physical illnesses:

> **WHAT DISABILITIES HAVE A LIMITED PAY PERIOD UNDER YOUR PLAN?**
> The lifetime cumulative maximum benefit period for all disabilities due to **mental illness** and disabilities based primarily on **self-reported symptoms** is 24 months. Only 24 months of benefits will be paid for any combination of such disabilities even if the disabilities:
> - are not continuous; and/or
> - are not related.
> Unum will continue to send you payments beyond the 24 month period if you meet one or both of these conditions:
>
> 1. If you are confined to a hospital or institution at the end of the 24 month period, Unum will continue to send you payments during your confinement.

If you are still disabled when you are discharged, Unum will send you payments for a recovery period of up to 90 days.

If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Unum will send payments during that additional confinement and for one additional recovery period up to 90 more days.

2. In addition to Item 1, if, after the 24 month period for which you have received payments, you continue to be disabled and subsequently become confined to a Hospital or institution for at least 14 days in a row, Unum will send payments during the length of the reconfinement.
Unum will not pay beyond the limited pay period as indicated above, or the maximum period of payment, whichever occurs first.

48. The LTD Plan further defines **Mental Illness** as follows:

MENTAL ILLNESS means a psychiatric or psychological condition classified in the Diagnostic and Statistical Manual of Mental Health Disorders (DSM), published by the American Psychiatric Association, most current as of the start of a disability. Such disorders include, but are not limited to, psychotic, emotional or behavioral disorders, or disorders relatable to stress or to substance abuse or dependency. If the DSM is discontinued or replaced, these disorders will be those classified in the diagnostic manual then used by the American Psychiatric Association as of the start of a disability.
.

49. The LTD Plan does not require a person to be institutionalized, or confined to a hospital when that person is suffering from a physical illness, in whole or in part, in order to receive benefits for more than 24 months.

50. Under the terms of the LTD Plan a person that is suffering from a purported

10

Mental Illness is treated disparately from a person that suffers from a

purported physical illness.

51. The term Mental Illness as defined under the terms of the LTD plan is

ambiguous and unenforceable, under both general insurance laws, ERISA,

and state and federal anti-discrimination laws.

52. The "mental Illness limitation" set forth in the LTD Plan violates both Title I

and III of the Americans with Disability Act of 1990 ("ADA") by unlawfully

discriminating against persons suffering from non-physical illnesses or

sicknesses.

53. The "mental Illness limitation" stereotypes persons suffering from non-

physical illnesses as suffering from conditions that are not as genuine as

compared with purely physical diseases or sicknesses and as such are

unlawful under Title I of the ADA.

54. The LTD Plan discriminates under unlawful grounds under Title III of the

ADA by failing to provide risk pooling  reasons why those suffering from

physical illnesses are treated differently than those suffering from non

physical illnesses.

55. Unum Life and Unum Group have not provided risk pooling analysis

permitting the LTD Plan to be free from challenge under the "safe harbor"

provisions in Title III of the ADA.


56. Unum Life and Unum Group  has not disclosed sound actuarial reasoning

permitting for such discrimination under Title III of the ADA.

57. Title I of the ADA provides in part that "[n]o covered entity shall discriminate

against a qualified individual with a disability because of the disability of such

individual in regard to ... employee compensation ... and other terms,

conditions and privileges of employment." 42 U.S.C. § 12112(a).

58. The implementing regulations found at 28 C.F.R. 26.301 provides in

pertinent part:

> (a) General. A public accommodation shall not impose or apply eligibility
> criteria that screen out or tend to screen out an individual with a disability
> or any class of individuals with disabilities from fully and equally
> enjoying
> any goods, services, facilities, privileges, advantages, or accommodations,
> unless such criteria can be shown to be necessary for the provision of the
> goods, services, facilities, privileges, advantages, or accommodations
> being offered.

59. Insurance is a service that is protected under Title III of the ADA. 42 U.S.C.

§12182(a).

60. The applicable portion of the ADA provides in part

> [i]t shall be discriminatory to subject an individual or class
> of individuals on the basis of a disability ... directly, or through
> contractual, licensing or other arrangements, to a denial of the
> opportunity of the individual or class to participate in or benefit
> from the goods, services, facilities, advantages or accommodations
> of an entity." 42 U.S.C. § 12182(b)(1)(A)(I).

61. Massachusetts anti-discrimination laws which prohibit discrimination on the

basis of  disability or handicap  provides in pertinent part:

> M.G.L.. c. 151B, §4(16) which prohibits: "Any employer,
> personally or through an agent, to dismiss from employment or
> refuse to hire, rehire or advance an employment or <u>otherwise</u>
> <u>discriminate against</u> because of his handicap, any person alleging
> to be a qualified handicapped person . . .
> unless the employer can demonstrate the accommodation required
> to be    made against the physical or mental limitation of the person
> would impose  an undue hardship to the employer's business. . . .

62. In addition, M.G.L.c. 151B, §4 also states that it shall be an unlawful practice:

> For any person to coerce, intimidate, threaten, or <u>interfere</u>
> (emphasis added) with another person in the exercise or enjoyment
> of any right granted or protected by this chapter or to coerce,
> intimidate, threaten or interfere with
> such another person for having aided or encouraged any other
> person in the exercise or enjoyment of any such right granted or
> protected under this    Chapter.

63. Dr. Andrewes was a "qualified individual with a disability" at the time that
the benefits were provided to her by Unum Life and Unum Group , and he is
afforded the protections provided under Title I of the ADA, and she has
suffered unlawful discrimination by having her benefits terminated under the
"mental Illness limitation" in the LTD Plan.

64. The mental Illness limitation is facially invalid under the ADA Titles I and III
and Massachusetts G. L. c. 151B(4).

**Count III**

**Interference in Rights Protected by the Americans with Disabilities Act
By Nicholas B. Kletti**

65. Dr. Andrewes  realleges paragraphs 1 through 64 and incorporates the same

by reference as if fully set forth herein again.

66.  Dr. Kletti regularly performs file reviews of individuals insured on disability

insurance policies issued by the Unum Group.

67.  Dr. Kletti did not examine Dr. Andrewes.

68.  Dr. Kletti reviewed unspecified records relating to Dr. Andrewes, and despite

the opinion of examining and treating physicians, concluded, that Dr.

Andrewes could return to work as an emergency room physician.

69.  Dr. Kletti did not interview or examine Dr. Andrewes before rendering a

psychological and impairment opinion for the benefit of Unum Group and

Unum Life that Dr. Andrewes was not occupationally or psychologically

impaired.

14

70. The American Medical Association - The Principles of Medical Ethics

provide with Annotations Especially Applicable to Psychiatry, G.1.e.

> Question: Do the same ethics principles apply in a diagnostic/consultative relationship (e.g., performing evaluations for an insurance company) as in the physician–patient relationship?
>
> Answer: Yes. Ethical physicians must comply with the code of ethics whenever providing professional services. Even when providing administrative or consultation services, physicians must conduct themselves appropriately. (But in such situations, the confidentiality expected in a therapeutic relationship may not exist.) This lack of confidentiality should be explained to the patient. (See also Sections 2 and 4, APA.) (1993).

> N.1.d
>
> Question: A reviewing psychiatrist for an insurance company has not examined my patient. Is it ethical for the reviewing psychiatrist to tell me how to treat my patient?
>
> Answer: No; but it is ethical for the reviewing psychiatrist to raise questions about the care or offer suggestions. The treating psychiatrist is decision maker about the treatment. However, the contract between the patient and the insurance company includes the right of review and the right of the insurer, in some circumstances, to terminate the benefits. Generally, there is also a right of appeal by the patient and the treating physician. Outright rejection by the reviewing psychiatrist may result in benefit termination, throwing the financial responsibility upon the patient. Ultimately, patients have a right to participate in the decision to have their care undergo review, understanding that refusal to allow review might jeopardize their insurance coverage. (1987)

71. Under Title III of the American's with Disabilities Act ("ADA"),

> No individual shall be discriminated against on the basis of
> disability in the full and equal enjoyment of the goods, services,
> facilities, privileges, advantages, or accommodations of any place
> of public accommodation by any person who owns, leases (or
> leases to), or operates a place of public accommodation.

72.  Insurance has been classified as a "public accommodation" under the ADA.

73. Dr. Kletti interfered with Dr. Andrewes' ADA (Title III) protected rights

when he offered an opinion claiming that Dr. Andrewes was not

occupationally impaired when he did not exam him, or interview Dr.

Andrewes.

74. Dr. Kletti's history of offering opinions in support of insurance company

denial or termination of disability benefits has been pervasive and believed to

be on-going and will be a threat to participants under ERISA long term

disability plans.


**<u>Count IV</u>**

**<u>Tortious Interference With Contractual Or Advantageous Relations Against
Dr. Kletti</u>**

75. Dr. Andrewes realleges paragraphs 1 through 74 and incorporates the same by

reference as if fully set forth herein again.

76. Dr. Andrewes has a contractual relationship or advantageous relationship with

Unum Group, and Unum Life and/or the LTD Plan that provides benefits to

him in the event he is occupationally impaired.

16

77. Dr. Kletti had reason so know that Mrs. Dr. Andrewes has and had a contractual or advantageous relationship with Unum Group and Unum Life and/or the LTD Plan, and knowingly interfered with that relationship by authoring a report opining that Dr. Andrewes was not occupationally impaired.

78. Dr. Kletti had reason to known that his report would be used in whole or in part to deny disability insurance benefits to Mrs. Dr. Andrewes.

79. By contending that Dr. Andrewes was not and is not occupationally impaired, Dr. Kletti unlawfully interfered with Dr. Andrewes's contractual relationship or advantageous relationship with Unum Group and Unum Life and/or the LTD Plan.

80. Dr. Kletti's acts and omissions were done willingly.

## Count V

## Award of Attorneys' Fees and Costs under 29 U.S.C. § 1132 (g)

81. Dr. Andrewes realleges paragraphs 1 through 80 and incorporates the same by reference as if fully set forth herein again.

82. As The Unum Group, and Unum Life have unlawfully terminate benefits, and has caused Dr. Andrewes to incur attorneys' fees and costs, and will cause her to incur additional fees and costs, Dr. Andrewes is entitled to recover under 29 U.S.C. § 1132 (g), costs of this litigation, including reasonable attorneys' fees and interest at the Massachusetts statutory rate of 12% simple interest per annum on all back due benefits.

17

83. As Dr. Kletti has materially and unlawfully caused Unum Group, and Unum Life and the LTD Plan to terminate benefits, and has caused Dr. Andrewes to incur attorneys' fees and costs, and will cause her to incur additional fees and costs, Dr. Andrewes is entitled to recover under 29 U.S.C. § 1132 (g), costs of this litigation, including reasonable attorneys' fees and interest at the Massachusetts statutory rate of 12% simple interest per annum on all back due benefits.

WHEREFORE, plaintiff demands relief and judgment against the defendants Unum Group, Unum Life Insurance Company of America and Dr. Nicholas B. Kletti, M.D., as follows:

1. In an amount of damages to be determined by this Court, or jury, plus pre-judgment interest, post-judgment interest, costs and reasonable attorneys' fees allowed by statute or otherwise.

2. Injunctive relief declaring the rights and duties of the plaintiff and defendants with respect to past benefits owed to the plaintiff, and future benefits to be paid to the plaintiff.

3. For an order precluding a remand of this matter for further determination by the defendants regarding the termination of benefits.

4. For an order precluding the defendants from using "off sets" in determining retroactive benefits owed to the plaintiff, or in the future because of the defendants' unclean hands.

5. recognize the decision of the United States Social Security Administration.

6. For a preliminary injunction and permanent injunction barring Dr. Nicholas B.
   Kletti, M.D., from interfering with plaintiff's rights under the ADA, and
   similarly situated persons;

7. For a preliminary injunction and permanent injunction barring Peter A. Dr.
   Kletti from working for ERISA fiduciaries, either directly or indirectly, under
   29 U.S.C. § 1132(a)(3).

8. For such other legal or equitable relief as this Court deems just and proper.

**PLAINTIFF CLAIMS TRIAL BY JURY ON ALL ISSUES TRIABLE
BY JURY.**

DAVID F. ANDREWES
By His Attorneys,

*/s/ Jonathan M. Feigenbaum*

_____
Jonathan M. Feigenbaum, Esq.
B.B.O. N#546686
Philips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. : (617) 367-8787
JonF@phillips-angley.com

L:\LITG\DAND004\Motions.Notes.Memos\complaint.final.wpd

19